NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE:  GINGRICH | Hon. Claire C. Cecchi, U.S.D.J. |
|  | Civil Action No.: 09-1898 (CCC) |
|  | **OPINION AND ORDER** |

**CECCHI**, District Judge.

This matter comes before the Court on Petitioner Kevin Gingrich's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(c).  The motion is decided without oral argument.  Fed. R. Civ. P. 78(b).  The Court has carefully considered the parties' submissions and for the following reasons denies Petitioner's motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner owned and lived on a 63-foot yacht, *Anxiolytic*, which he docked at Lincoln Harbor Yacht Club ("LHYC") in Weehawken, New Jersey from May 2006 to December 2008. (Resp. Mem p. 1; Gingrich Dep. p. 43). Respondent Lincoln Harbor Enterprises ("Lincoln Harbor") owned and continues to own LHYC. (Resp. Mem. p. 1). On the morning of December 8, 2009 a fire destroyed *Anxiolytic* and damaged the adjacent docks at LHYC and a second vessel, *4 Duzie*, owned by Jacob Shekerchi and Rindge Land & Lake, Inc. (Resp. Mem. p. 4).

On this motion for partial summary judgment, Petitioner argues that he has no contractual obligation to indemnify Respondent for the damage to the docks and the *4 Duzie*.  He argues that a dockage agreement between the parties, which contained an indemnification clause, expired more than a month prior to the fire and a new agreement was not signed.  Respondent argues that an implied-in-fact contract with the terms of the prior dockage agreement existed and the indemnification clause was in place at the time of the fire.

Over the course of Petitioner's dockage at LHYC, Petitioner and Respondent had entered into four identical written dockage agreements, the last of which expired on October 30, 2008. (Wamser Decl. Exs. B–E). The indemnification clause in those agreements provided in relevant part that

> 3.   The vessel OWNER and the vessel will indemnify, defend and hold harmless LHYC for
>
>      the consideration hereinbefore set forth, from any costs, expenses, damages and against
>
>      all claims, demands, loss, damage, liability, lawsuits, causes of action, including

judgments and attorneys' fees, that may be asserted by anyone due to:

(a)   Property loss of any type, property damage due to fire, theft, collision, or property

loss from any other cause to said OWNER'S sails, furniture, equipment, tackle, or

appurtenances, or to any other property contained in or on OWNER'S vessel, or

on the premises of LHYC or to personal property of others on the vessel or LHYC

premises;

. . . .

(c)   Any alleged damage, or loss to marine property, non-marine property or personal

injury caused in part, regardless of how slightly, by vessel OWNER, his agents,

servants, invitee or employees.

(*Id*. Ex. E).

Janel Vasquez, the dock master at LHYC, was deposed and testified that he filled in an unsigned dockage agreement and left it in Petitioner's mailbox several weeks prior to October 30, 2008. (Vasquez Dep. pp. 229–31). Petitioner stated that he never received that dockage agreement. (Gingrich Dep. p. 48). Petitioner never signed a new agreement, did not pay a new deposit, and never spoke with LHYC staff about his intention to continue docking at LHYC. ( *Id.* pp. 48–49; Vasquez Dep. pp. 229, 244–45). However, Petitioner continued to dock his yacht at LHYC without objection after the last written agreement expired on October 30, 2008. (Gingrich Dep. pp. 52–53). He testified that he intended to pay for his dockage after October 30, 2008. (*Id.* p. 54). Petitioner also testified that he never negotiated for any modifications to the past agreements or otherwise objected to the terms of the agreements. (*Id.* pp. 40–42).

In late November 2008 Petitioner moved the *Anxiolytic* from F Dock to E Dock at the request and with the help of LHYC staff so that F Dock could be resurfaced. (*Id.* pp. 49–50; Vasquez Dep. p. 245). Gingrich continued to receive electricity on the *Anxiolytic* and intended to pay for it, but had not yet requested to be hooked up to the winter water supply. (Gingrich Dep. pp. 53–54; Gingrich Aff. ¶¶ 3–4). On November 17, 2008 Gingrich paid an electric bill, which covered the month of October. (Vasquez Dep. p. 237). LHYC prepared two invoices for Gingrich dated December 1, 2008 for electricity for the month of November. (*Id.* p. 238).

On April 22, 2009 Petitioner filed a Complaint for Exoneration From or Limitation of Liability. On September 28, 2009 Lincoln Harbor filed its answer and a claim against Petitioner seeking damages. On November 3, 2009 Petitioner filed a counterclaim against Lincoln Harbor for the damage to *Anxiolytic*. On July 28, 2010 Shekerchi, owner

of *4 Duzie*, commenced an action against Lincoln Harbor for damage to his vessel, and on October 1, 2010 Pacific

Indemnity Company ("Pacific"), a subrogee of Shekerchi, also commenced an action against Lincoln Harbor for damage

to *4 Duzie*. These subsequent actions were consolidated with the instant action on October 26, 2010.[1] Lincoln Harbor

filed an amended claim on December 15, 2010 seeking indemnification from Petitioner for any damages awarded in the

actions brought by Shekerchi and Pacific. Petitioner now brings the pending motion for partial summary judgment on

all claims brought against him by Lincoln Harbor based in contractual indemnification.

### II. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits

or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no

genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving

party, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d

860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*,

477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific

facts to show that, to the contrary, there exists a genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A fact is "material" if a dispute

about that fact "might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as

to that fact "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court's role is to determine

whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. *Id.* at 249.

### III. DISCUSSION

Petitioner argues that because the dockage agreement expired on October 30,2008 and the parties had not

entered into a subsequent written agreement as of December 9, 2008 — the date of the fire — Petitioner has no

contractual obligation to indemnify Respondent in the consolidated actions as a matter of law. (Pet. Mem. pp. 1, 4).

Respondent counters that an implied-in-fact contract existed between the parties incorporating the terms of the latest

---

[1]

Nationwide Property & Casualty Insurance Company filed an action against Lincoln Harbor on December 7, 2010 for
damage to *4 Duzie*. That action was consolidated with the instant action for discovery and pretrial purposes only on April
5, 2011 and is not at issue on this motion.

written agreement and that the indemnification clause is therefore enforceable. (Resp. Opp. Mem. pp. 7–18).

Petitioner further argues that because the dockage agreement does not unequivocally extend the exculpatory clause beyond the October 30, 2008 expiration date, construing the contract against the drafter according to maritime law, the exculpatory clause was unenforceable after October 30 as a matter of law.

Construing all the facts and inferences in a light most favorable to Respondent, the Court finds a genuine issue of material fact as to whether Petitioner is required to indemnify Respondent for damages awarded in the consolidated actions.

### A. Substantive Law

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of [] [a]ny civil case of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1). "A contract dispute falls within admiralty jurisdiction if the subject matter of the contract is maritime." *Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 72 (8th Cir. 1988) (citing *Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1036 (9th Cir. 1984). Dockage/wharfage agreements are maritime contracts. *See id.* at 73; *see also Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1037 (9th Cir. 1984); *Lincoln Harbor Enters., LLC v. M.Y. Diplomat*, Civ. No. 08-526(WHW), 2008 US Dist. LEXIS 95004, at *6 (D.N.J. Nov. 21, 2008); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law §§ 3-10, 5-8 (5th ed. 2011).

"Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." *E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). Federal maritime contract law consists of general common law contract principles overlaid with doctrines peculiar to admiralty. *See Rederi v. Commercial Stevedoring Co.*, 256 F.2d 227, 229–31 (2d Cir. 1958); Schoenbaum, *supra*, § 5-1; *cf. T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983) (applying both general legal principles and admiralty-specific law on bailments in maritime case).

"General contract law recognizes and enforces 'implied-in-fact' contracts." *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary, & Tobacco Workers Int'l of Am.*, 28 F.3d 347, 355 (3d Cir. 1994) (applying federal law). Furthermore, under maritime law a maritime contract "need not be in writing unless expressly so required by an applicable statute." *Great Circle Lines, Ltd. v. Matheson & Co.*, 681 F.2d 121, 124 (2d Cir. 1982) (internal quotation marks and citation omitted). *See also Goodman*, 859 F.2d 71 (interpreting unwritten wharfage agreement without questioning its validity).

[G]eneral principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.

28 F.3d at 355–56. *See also* 17A  Am. Jur. 2d Contracts § 18.

Indemnity agreements are generally enforceable in admiralty. Schoenbaum, *supra*, § 5-21. Under general maritime law, exculpatory clauses must be clear and unequivocal. *See, e.g.*, *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 715 (8th Cir. 2003); *Edward Leasing Corp. v. Uhlig & Assocs., Inc.*, 785 F.2d 877, 889 (11th Cir. 1986). In reviewing exculpatory clauses, the Court will look to the "everyday meaning" of the contract language and will "look to the contract as a whole to determine whether it unambiguously states the parties' intentions." *Sander*, 334 F.3d at 716.

### B. Analysis

First, Respondent has identified specific facts that could lead a reasonable jury to find that the parties had an implied-in-fact contract. Petitioner continued to dock his boat at LHYC after the latest written agreement expired on October 30, and LHYC not only permitted continued dockage, but helped Petitioner move his boat to another dock in the marina to allow for dock maintenance. Petitioner continued to use electricity provided by LHYC and LHYC prepared invoices for Petitioner's November electricity use. Petitioner never expressed any intention to leave the marina and in fact testified that he intended to pay for dockage after October 30. A reasonable jury could find that the conduct of the parties created an implied-in-fact contract.

Second, pursuant to the general principles of contract law discussed in *Luden's, Inc.*, a reasonable jury could find that the material terms of the expired dockage agreement, including the indemnification clause, survived. The parties had signed four dockage agreements between 2005 and 2007. The agreements contained identical language, including the indemnification clause. Neither party manifested any wish not to be bound by the terms of the lapsed agreement either before or after the lapse. Petitioner never negotiated for any modifications to the past agreements or otherwise objected to the terms of the agreements. A reasonable jury could find that the parties continued to act as if performing under the terms of a dockage agreement and that neither party manifested a wish not to be bound by the material terms of the expired agreement. *See Luden's, Inc.*, 28 F.3d at 355–56. The material terms of the contract include the exculpatory

clause.

Third, a reasonable jury could find that the indemnification clause clearly and unequivocally requires Petitioner to indemnify Respondent for the damage caused by the fire on the *Anxiolytic* in the consolidated actions. The clause states that vessel owner will indemnify LHYC from "<u>any</u> costs, expenses, and damages and against <u>all c</u>laims . . . that may be asserted by <u>anyone</u> due to" property loss or damage. (Emphasis added). A reasonable jury could find that the parties clearly intended for Petitioner to indemnify Respondent for any damages awarded in the consolidated actions.

**IV. CONCLUSION**

**THEREFORE, IT IS** on this 30th day of November, 2011

**ORDERED** that Petitioner's motion for partial summary judgment is denied [docket entry no. 102].


     *s/ Claire C. Cecchi*
**HON. CLAIRE C. CECCHI**
**United States District Judge**

6